# United States Court of Appeals
## For the First Circuit

No. 02-2690, 02-2691

UNITED STATES OF AMERICA,

Appellee,

v.

TREVIS CALDWELL,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Oberdorfer,[*] Senior District Judge.

Robert C. Andrews for appellant.
Margaret D.McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for the United States.

February 19, 2004

---

[*]Of the District of the District of Columbia, sitting by designation.

**OBERDORFER**, <u>**Senior District Judge**</u>.  Defendant, Trevis Caldwell, appeals from the imposition of a 223-month sentence of confinement after a spree of state crimes, a brief interlude in the State of Maine's Adult Drug Treatment Program, and a more dangerous spree of federal offenses, including an armed bank robbery.  We find any error in the district court's calculation of Caldwell's criminal history to be harmless, and thus affirm the district court's sentence of 223 months imprisonment.  However, the district court should have indicated whether Caldwell's federal sentence was imposed consecutively or concurrently to his undischarged state sentences, necessitating a remand solely for that purpose.

## I.  BACKGROUND

The factual and procedural background of this case is complicated by the fact that Caldwell committed the offenses that led to the federal charges, conviction and sentence in the present case while he was supposed to be participating in a drug treatment program ordered by Maine's Adult Drug Treatment Court as an alternative to imprisonment for a number of state convictions.  We set forth here only the information material to the issues raised on appeal: (1) whether the district court erred in its calculation of Caldwell's criminal history; and (2) whether the district court erred in refusing to order that Caldwell's federal sentence run concurrently to his undischarged state sentences.

## A.        State Proceedings

Before getting into federal trouble, in April 2002, Caldwell had been charged and convicted of a number of state offenses.[1]  Four of those cases were being handled in one of Maine's "Adult Drug Treatment Courts,"[2] to which Caldwell had been admitted on March 29, 2002.  A defendant whose cases are transferred to Adult Drug Treatment Court has the opportunity to avoid imprisonment by entering and successfully completing a drug treatment program.  Failure results in the implementation of an alternate disposition.[3]

On April 5, 2002, Caldwell entered into a plea agreement covering the four cases in Drug Treatment Court.  In one case, Caldwell had already been convicted and sentenced, but he was facing a probation revocation motion, <u>Maine</u> v. <u>Caldwell</u>, No. 00-335

---

[1]<u>See Maine</u> v. <u>Caldwell</u>, No. 00-183 (Me. Super. Ct. judgment and commitment Jan. 18, 2001); <u>Maine</u> v. <u>Caldwell</u>, No. 00-335 (Me. Super. Ct. judgment and commitment Apr. 5, 2001);  <u>Maine</u> v. <u>Caldwell</u>, No. 01-1194 (Me. Super. Ct. plea of guilty entered Apr. 5, 2002); <u>Maine</u> v. <u>Caldwell</u>, No. 02-355 (Me. Super. Ct. plea of guilty entered Apr. 5, 2002); <u>Maine</u> v. <u>Caldwell</u>, No. 02-356 (Me. Super. Ct. plea of guilty entered Apr. 5, 2002).

[2]<u>See Maine</u> v. <u>Caldwell</u>, No. 00-335 (renumbered No. 02-591); <u>Maine</u> v. <u>Caldwell</u>, No. 01-1194; <u>Maine</u> v. <u>Caldwell</u>, No. 02-355; <u>Maine</u> v. <u>Caldwell</u>, No. 02-356.

[3]These courts only operate in certain counties.  Cases which are pending in other counties may be transferred to a county with a Drug Treatment Court with the consent of the presiding judge. For a more detailed description of these courts, their purpose and procedures, see App. 61-70, <u>United States</u> v. <u>Caldwell</u>, No 2:02-CR-65 (D. Me. filed Dec. 10, 2002); App. 213-242 (Drug Treatment Court's Policy and Procedure Manual).

(Me. Super. Ct. Apr. 5, 2001).[4]  In the other three cases he had been charged, but not yet convicted or sentenced.  See Maine v. Caldwell, No. 01-1194 (Me. Super. Ct. filed Aug. 10, 2001); Maine v. Caldwell, No. 02-355 (Me. Super. Ct. filed Oct. 16, 2001); Maine v. Caldwell, No. 02-356 (Me. Super. Ct. filed Dec. 6, 2001).  As a result of the plea agreement, the drug treatment court revoked Caldwell's probation in No. 00-335, and imposed a new sentence of five months in custody, with credit for the five months he had already served, to be followed by probation (effectively a sentence of probation).  In each of the other three cases, Caldwell entered pleas of guilty and sentencing was suspended.  The plea agreement provided that if Caldwell were to successfully complete the drug treatment program, his eventual sentence for all four cases would not require him to return to custody.[5]  If, on the other hand,

---

[4]On April 5, 2001, Caldwell had been sentenced to 364 days in jail, all suspended, and one year probation. On August 15, 2001, the Department of Corrections filed a motion to revoke probation, citing Caldwell's failure to report and failure to pay restitution. On January 23, 2002, the court continued the motion to revoke probation pending completion of Caldwell's evaluation for participation in the Adult Drug Treatment Court.  On March 28, 2002, the case was transferred to the Drug Treatment Court.

[5]Specifically, the plea agreement provided that if Caldwell successfully completed the drug treatment program, he would receive the following concurrent sentences of imprisonment in the three cases where sentencing had been suspended: in No. 01-1194, 30 months, with all but five months suspended, and credit for time already served, plus three years probation; in No. 02-355, five months with credit for time already served; and the same in No. 02-356.  As Caldwell had already served five months in No. 00-335, none of these sentences would actually result in any imprisonment.

Caldwell failed to complete the drug treatment program, he faced a total of 22 months imprisonment.[6]

Almost immediately after entering the drug treatment program, on April 12, 2002, Caldwell disappeared from the YMCA where he was supposed to be staying. In June 2002, he was terminated from the drug treatment program, triggering the provisions of the plea agreement that applied if he failed to complete the program. See supra note 6. Pursuant thereto, on October 29, 2002, the state court revoked Caldwell's probation in No. 00-335 and imposed consecutive sentences totaling twenty-two months imprisonment: six months for the probation revocation in No. 00-335 and a total of sixteen months for the three cases where sentencing had been suspended, Nos. 01-1194, 02-355, 02-256. As Caldwell had to be released from federal custody to permit the state sentencing to proceed, see infra, he never began to serve his state sentences but was, instead, immediately returned to federal custody.

At the time Caldwell entered the drug treatment court, he had one other pending state case. Maine v. Caldwell, No. 00-183 (Me. Super. Ct. judgment and commitment Jan. 18, 2001). This case,

---

[6]Specifically, the plea agreement provided that if Caldwell failed to complete the drug treatment program, he would receive the following consecutive sentences of imprisonment: in No. 00-335, revocation of probation and an additional six months; in No. 02-355, six months; in No. 02-356, four months; in No. 01-1194, 30 months, with all but six months suspended.

like No. 00-335, arose out of events that occurred in Oxford County, Maine, in June 2002.[7] In No. 00-183, Caldwell had received a sentence of nine months in jail, all suspended, and one year probation. When he was sentenced in No. 00-335, a few months later, on April 5, 2001, that sentence was imposed concurrently to his sentence in No. 00-183. However, no motion to revoke probation was ever filed in No. 00-183, and the case was never formally transferred to the Drug Treatment Court.

## B.    Federal Proceedings

On April 13, 2002, the day after he disappeared from the drug treatment program, Caldwell, with an accomplice, commenced the series of related offenses, all in Maine, which precipitated his arrest, federal prosecution, conviction, and sentencing. He began by robbing a gasoline station convenience store and threatening the clerk with a knife. A few days later, on April 17, 2002, he robbed another gasoline station convenience store, making an apparent bomb threat. And finally, on April 18, 2002, he robbed a bank, threatening the teller with a sawed-off shotgun. In flight from

---

[7]On June 3, 2000, Caldwell stole an automobile and a cell phone, leading to his conviction in No. 00-335 for burglary of a motor vehicle, theft by unauthorized taking or transfer, and theft by unauthorized use of property. On June 11, 2000, he tried to avoid being stopped by the police, leading to his conviction in No. 00-183 for eluding an officer and passing a road block. He claimed that he tried to elude the police on June 11, 2000, because he was afraid they would discover his June 3, 2002 thefts.

the bank robbery, he and his accomplice were identified and arrested in New Hampshire.

After Caldwell's arrest, he was transferred to federal custody, in Maine, and charged with a number of federal offenses. On June 29, 2002, he entered a plea of guilty to five of the six federal charges pending against him. He has remained in federal custody since his arrest on the federal charges, except for his brief release to state authorities for sentencing.

On November 26, 2002, the district court held a hearing on disputed sentencing issues. Two of its rulings there led to the present appeal. First, in calculating Caldwell's criminal history score, the district court ruled that Caldwell's two sentences from his Oxford County cases, 00-335 and 00-183, were not related, as defined by section 4A1.2(a) of the Sentencing Guidelines. U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) & cmt. n.3 (2002). As a result, Caldwell was assigned one criminal history point for his indeterminate probationary sentence in No. 00-183,[8] imposed in January 2001, and two criminal history points for the six-month sentence he had received on October 29, 2002, after his probation was revoked (for the second time) in No. 00-335.[9] If the district

---

[8]Section 4A1.1(c) provides: "Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item." U.S.S.G. § 4A.1.1(c).

[9]Section 4A1.1(b) provides: "Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)." U.S.S.G. § 4A.1.1(a). (Section 4A1.1(a) applies to

court had ruled that the sentences were related, Caldwell would have been assigned a total of two criminal history points for both convictions. Ultimately, Caldwell's final criminal history score was 11, placing him in Criminal History Category V;[10] had the district court ruled in his favor, it would have been 10, also in Criminal History Category V.

The district court also rejected Caldwell's request to have his federal sentence run concurrently to his four undischarged state sentences, ruling that it lacked the power to order that the federal sentence run concurrently where Caldwell was in federal custody and had not yet begun to serve his state sentences.

Caldwell's guideline range, based on an offense level of 24 and a criminal history category of V, was 92-115 months imprisonment. On December 11, 2002, the district court sentenced him to 103 months each on four of the counts of conviction, to run concurrently, and a mandatory consecutive sentence of 120 months on the remaining count.

## II. DISCUSSION

We review the district court's interpretation and application of the United States Sentencing Guidelines de novo and its findings of fact for clear error. See United States v. Maxwell,

---

sentences exceeding one year and one month. Id. § 4A1.1(a).)

[10]The total Criminal History includes points assigned for other prior convictions, including the three other cases that had been transferred to the drug treatment court.

351 F.3d 35, 42 (1st Cir. 2003); <u>United States</u> v. <u>Gonzalez-Alvarez</u>, 277 F.3d 73, 77 (1st Cir. 2002).

**A.        Criminal History**

On appeal, Caldwell challenges the district court's calculation of his criminal history on the ground that under section 4A1.2 of the Guidelines it should have treated his two Oxford County convictions as related.

Section 4A1.2 provides:

> Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in *related* cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c). Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.

U.S.S.G. § 4A1.2 (emphasis added). Application Note 3 further defines the term "related cases,"

> Related Cases. Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing. The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that under represents the seriousness of the defendant's criminal history and the danger that he presents to the public.

Id. § 4A1.2, cmt. n.3.

If Caldwell's two Oxford County convictions had been treated as related, they would have netted two, instead of three, criminal history points, and his criminal history score would have fallen from eleven to ten. However, a criminal history score of ten would still have left Caldwell in Criminal History Category V, leaving his sentencing guideline range unchanged. Accordingly, any error in the district court's calculation of Caldwell's criminal history was harmless.

## B.         Consecutive v. Concurrent Sentence

Caldwell also challenges the district court's refusal to order that his federal sentence run concurrently to his four undischarged state sentences. When a federal court is imposing sentence on a defendant with an undischarged term of imprisonment, it has the authority to decide whether its sentence should run concurrently or consecutively to the undischarged term of imprisonment. 18 U.S.C. § 3584(a).[11] The exercise of that

_____

[11]In relevant part, section 3584(a) provides:

(a) Imposition of concurrent or consecutive terms.- . . . [I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively

-10-

authority is predicated on the court's consideration of the factors listed in 18 U.S.C. § 3553(a), see 18 U.S.C. § 3584(b),[12] and "any applicable guidelines or policy statements issued by the Sentencing Commission," see U.S.S.G. § 5G1.3, cmt. background.[13] Section 5G1.3 of the Sentencing Guidelines addresses the "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment": part (a) specifies when consecutive sentences are required; part (b) specifies when concurrent sentences are

---

unless the court orders that the terms are to run concurrently.

18 U.S.C. § 3584(a).

[12]In its entirety, section 3584(b) provides:

(b) Factors to be considered in imposing concurrent or consecutive terms.--The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

18 U.S.C. § 3584(b).

[13]In its entirety, the Background Note for section 5G1.3 of the Sentencing Guidelines states:

Background: In a case in which a defendant is subject to an undischarged sentence of imprisonment, the court generally has authority to impose an imprisonment sentence on the current offense to run concurrently with or consecutively to the prior undischarged term. 18 U.S.C. § 3584(a). Exercise of that authority, however, is predicated on the court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable guidelines or policy statements issued by the Sentencing Commission.

required; part (c) covers "any other case" and gives the district court the discretion to impose sentence concurrently or consecutively, "to achieve a reasonable punishment for the instant offense."  U.S.S.G. § 5G1.3(a)-(c).[14]

The present case presents an unusual set of facts. Caldwell was arrested and taken into federal custody before he was sentenced for his state offenses.  He was briefly released to state custody, solely for the purpose of sentencing, and then returned to federal custody.  At the time he was sentenced for his federal offenses, thus, he had undischarged state sentences that he had not yet begun to serve and that, in the ordinary course, he would not begin to serve until released from federal custody.

The district court concluded that this case was governed by part (c) of section 5G1.3 of the Sentencing Guidelines, but that he was unable to exercise his discretion thereunder because there was nothing he could do to get Caldwell's state sentences to start to run once he remanded Caldwell to the custody of the Federal Bureau of Prisons to serve his federal sentence.  The district court explained his ruling as follows:

---

[14]In its entirety, section 5G1.3(c) provides:

(c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(c).

> If there's anything to impose – to deal with in [Sentencing Guideline §] 5G1.3 here, it will be under (c), the discretionary part. . . .
>
> I'm not able to impose a concurrent sentence because the defendant is not serving a state sentence. And notwithstanding [counsel's] arguments about a Federal Judge's power, I can't make the state sentence start to run.
>
> I can and I will remand this defendant on sentencing to the custody of the Bureau of Prisons, the Federal Bureau of Prisons, but they, too, cannot make a state sentence start to run. All they can do is at the right time release the defendant to the state for him to begin to serve his state sentence. So the most I could do if the guidelines permitted me was to treat this as some kind of departure or basis for reducing the sentence to reflect a state sentence to follow later.

We agree with the district court that it lacked the power to order Caldwell's state sentences to begin to run. And we further agree that, under the unusual circumstances of this case, the district court's lack of power to order a state sentence to begin to run poses a significant practical impediment to Caldwell's achieving concurrent service of his state and federal sentences, should the federal sentences be imposed to run concurrently. However, we see no basis for concluding that these practical problems deprive the district court of its discretion, or the power to exercise that discretion, to impose its sentence concurrently or consecutively to the undischarged state sentences. See 18 U.S.C.

-13-

§ 3584(a); U.S.S.G. § 5G1.3 (c).[15] Accordingly, we remand to permit the district court to exercise its discretion to impose Caldwell's federal sentence to run concurrently, partially concurrently or consecutively to his undischarged state sentences. If the district court should decide to impose Caldwell's federal sentence either concurrently, or partially concurrently, to any of his undischarged state sentences, Caldwell can then seek to overcome the practical barriers to concurrent service in whatever manner he sees fit.[16]

On remand, the district court's discretion to impose Caldwell's federal sentence to run concurrently does not apply to Caldwell's six-month sentence imposed in 00-335. Application Note 6 to section 5G1.3 provides:

> If the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and has had such probation, parole, or supervised release revoked, the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release in order to provide an incremental penalty for the violation of probation, parole, or supervised release.

[15]This case does not fall into the category of cases where the district court's "silence" leads to a presumption that the sentences run consecutively. See 18 U.S.C. § 3584(a). The issue was raised before the district court, and the only reason why the district court did not rule on the Caldwell's request for a concurrent sentence was its mistaken belief that it lacked the discretion to do so.

[16]One, but probably not the only possibility, would be for Caldwell to ask the state court to count his time in federal prison as service of his state sentence.

U.S.S.G. § 5G1.3, cmt. n.6. This court has held that this Application Note is "mandatory." See United States v. Chapman, 241 F.3d 57, 61 (1st Cir. 2001); see also United States v. Gondek, 65 F.3d 1, 3 (1st Cir. 1995).

When Caldwell committed the offenses leading to his federal sentence, he was on probation in 00-335. His probation in that case was revoked, and a six-month sentence imposed. That six-month sentence is one of Caldwell's four undischarged state sentences. Accordingly, Caldwell's 223-month federal sentence must be imposed consecutively to that six-month state sentence. For the other three undischarged state sentences, however, no such constraint applies. At the time Caldwell committed his federal offenses, sentencing had been suspended in each of those cases. Thus, he was not on "state probation, parole, or supervised release" in any of those cases, and the state sentences he eventually received, for a total of 16 months imprisonment, were not "imposed for the violation of probation, parole, or supervised release." Accordingly, the district court has discretion to impose Caldwell's federal sentence to run concurrently or consecutively to 16 months of Caldwell's state sentence.

## III. CONCLUSION

For the reasons stated in the foregoing opinion, we affirm the district court's calculation of Caldwell's criminal history and its imposition of a 223-month sentence of imprisonment.

-15-

We remand for the limited purpose of having the district court indicate whether that sentence is imposed concurrently with or consecutively to Caldwell's undischarged state sentences.

<u>Affirmed in part, remanded in part</u>.