# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2058

———————

United States of America,      *

            Appellee,      *

                             *    Appeal from the United States

      v.                      *    District Court for the

                             *    Eastern District of Arkansas.

Christopher Martin Cole,      *

                         *

           Appellant.      *

———————

Submitted: January 11, 2005
Filed: July 28, 2005

———————

Before WOLLMAN, FAGG, and BYE, Circuit Judges.

———————

BYE, Circuit Judge.

After this court reversed an upward departure Christopher Martin Cole received on a sentence of twenty-four months imprisonment for transmitting a threat in interstate commerce, United States v. Cole, 357 F.3d 780, 785 (8th Cir. 2004), the district court[1] resentenced Cole to twelve months imprisonment. Cole now appeals a second time asserting his federal sentence should have run concurrent to a related state sentence. We disagree and affirm the district court.

———————

[1]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

# I

On October 16, 2001, Cole called a 911 operator in Paragould, Arkansas, and made a false threat about anthrax being in a school building. Around the same time, Cole made a number of other false threats by telephone, including a bomb threat to a school. The anthrax threat resulted in this federal charge, and the other threats led to state charges.

Cole was arrested on a federal warrant related to the anthrax threat on November 2, 2001. He remained in federal custody for several months while a mental evaluation was performed. On March 8, 2002, Cole was released from federal custody on a recognizance bond. On September 10, 2002, the state of Arkansas arrested Cole on a warrant arising from the state charges.

Cole pleaded guilty to the federal charge and was originally sentenced on December 19, 2002. At that time, the state charges against Cole had not been resolved, but Cole was in state pretrial custody. While the first appeal in this case was pending, Cole pleaded guilty to the state charges, received and then completed his state sentence. On March 19, 2004, Cole returned to federal custody. A detention hearing was held soon after to determine whether Cole should be detained while awaiting the resentencing we ordered in Cole's first appeal. On March 22, 2004, Cole was again released on his own recognizance.

The district court held a resentencing hearing on April 19, 2004. Cole requested a sentence of "time served," that is, to be given credit towards the federal sentence for the time he had spent in state custody. The government opposed Cole's request and asked the district court to impose a federal sentence that would run consecutive to any state time Cole had served. The district court denied both requests, and simply sentenced Cole to twelve months imprisonment.

Cole filed a timely appeal raising two points. First, he contends his federal sentence began running at the time he was originally sentenced on December 19, 2002, and thus ran concurrent to the state sentence he later received. In the alternative, Cole argues his twelve-month sentence does not comport with United States Sentencing Guideline (U.S.S.G.) § 5G1.3(c)'s goal of achieving a "reasonable incremental punishment" for the offense, given the amount of time he already served in state custody on the charges of making a false bomb threat. After filing the appeal, Cole raised a third issue by filing a letter under Rule 28(j) of the Federal Rules of Appellate Procedure. The letter called our attention to Blakely v. Washington, 124 S. Ct. 2531 (2004), and argued the district court's sentence violated Cole's Sixth Amendment rights.

II

We review de novo the question whether Cole's federal sentence began running at the time he was originally sentenced, but while in state custody. See United States v. McCrary, 220 F.3d 868, 869 (8th Cir. 2000) (reviewing de novo a question related to state versus federal custody of a criminal defendant). We also review de novo the district court's application of U.S.S.G. § 5G1.3. United States v. Dixon, 360 F.3d 845, 846 (8th Cir. 2004).

Cole first contends his federal sentence began running on December 19, 2002. We disagree. Cole was not in federal custody at that time – he was in state custody. Cole was only transferred temporarily to the federal authorities for the purpose of being sentenced. If, while under the primary jurisdiction of one sovereign, a defendant is transferred to the other jurisdiction to face a charge, primary jurisdiction is not lost but rather the defendant is considered to be "on loan" to the other sovereign. See, e.g., United States v. Smith, 812 F. Supp. 368, 371 (E.D.N.Y. 1993). This comports with the principles that ordinarily apply when two separate sovereigns exercise jurisdiction over the same person during the same time period.

As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person. Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir. 1991); see also United States v. Vann, 207 F. Supp. 108, 111 (E.D.N.Y. 1962) ("The controlling factor in determining the power to proceed as between two contesting sovereigns is the actual physical custody of the accused."). Primary jurisdiction continues until the first sovereign relinquishes its priority in some way. Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail, 2) dismissal of charges, 3) parole, or 4) expiration of sentence. Smith, 812 F. Supp. at 370 n.2.

In this case, the United States obtained primary jurisdiction over Cole on November 2, 2001, when he was arrested on a federal warrant related to the anthrax threat. He remained in federal custody until March 8, 2002, while a mental evaluation was performed. On March 8, 2002, he was released from federal custody on a recognizance bond. Thus, at that time, the federal government relinquished its primary jurisdiction over Cole.

On September 10, 2002, the state of Arkansas obtained jurisdiction over Cole by arresting him on charges related to the telephonic bomb threat and other hoax 911 calls. Arkansas did not thereafter lose its jurisdiction by "loaning" Cole to federal authorities to be sentenced on December 19, 2002. After the first sentencing, the federal authorities returned Cole to the state of Arkansas where he continued to be held in pretrial detention on the pending state charges.

"A sentence to a term of [federal] imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Because Cole returned to state custody after receiving his original federal sentence on December 19, 2002, instead of being

committed to the custody of the Bureau of Prisons to commence service of the sentence, he did not begin to serve his federal sentence at that time.[2]

Next, Cole contends the district court misapplied U.S.S.G. § 5G1.3(c) by failing to achieve a "reasonable incremental punishment" for Cole's total offense conduct. We disagree, because § 5G1.3(c) was not available for the district court's application. Section 5G1.3(c) permits the district court to order concurrent sentences when there is a "prior undischarged term of imprisonment" not covered by subsections (a) or (b). At the time of his original sentence on December 19, 2002, Cole was not subject to a "prior undischarged term of imprisonment" because he had not yet been sentenced in state court. At the time of his resentencing on April 19, 2004, Cole was not subject to a "prior undischarged term of imprisonment" because by then he had already discharged his state sentence. Thus, the district court did not err by failing to apply § 5G1.3(c) to Cole's situation.[3]

Finally, we address Cole's Sixth Amendment challenge to his sentence. After Cole filed his 28(j) letter referencing <u>Blakely</u>, the Supreme Court decided <u>United</u>

---

[2]We note, however, Cole should receive credit against his federal sentence for the time spent in federal custody between November 2, 2001, and March 8, 2002. He should also get credit for the short time spent in federal custody after being released from state custody and prior to being released on his own recognizance on March 22, 2004.

[3]In the first appeal, it was unclear whether Cole's state custody was attributable to an actual state conviction or merely pretrial detention. Thus, there was some concern about whether the length of Cole's custody on all charges exceeded the length of any federal sentence that could be imposed upon resentencing should concurrent sentencing be appropriate. <u>See</u> <u>Cole</u>, 357 F.3d at 786 (Bye, J., dissenting in part and concurring in part). At this time, it is clear Cole was only in state pretrial custody when he was first sentenced on the federal charge. Further, concurrent sentencing was not an option at the time of resentencing because by then Cole had already completed his state sentence.

States v. Booker, 125 S. Ct. 738 (2005). Booker applied Blakely to the federal sentencing guidelines and concluded that sentencing a defendant under a mandatory guideline regime violated the Sixth Amendment. Id. at 756. As a remedy, the Court struck down the statutory provisions which made the guidelines mandatory, and declared the guidelines effectively advisory. Id. at 764-65.

After Booker was decided, Cole asked to supplement his briefing to request resentencing in light of Booker. Because Cole did not raise his Sixth Amendment challenge until appeal, we review his claim for plain error only, which requires him to "demonstrate by a 'reasonable probability' he would have received a more favorable sentence under an advisory guideline regime." United States v. Torres, 409 F.3d 1000, 1004 (8th Cir. 2005) (quoting United States v. Pirani, 406 F.3d 543, 549 (8th Cir.2005) (en banc)).

In his supplemental briefing, Cole concedes he cannot show plain error under Pirani's standard, because there is nothing in the record to demonstrate he would fare any better if resentenced under advisory guidelines. We agree.

### III

For the reasons stated, we affirm the twelve-month sentence ordered by the district court.

_____