**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2406
_____

STEPHEN GEORGE,
                                          Appellant
v.

ARCHIE LONGLEY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1-10-cv-00065)
Magistrate Judge:  Honorable Susan Paradise Baxter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2012
Before:  RENDELL, FUENTES and WEIS , Circuit Judges

(Opinion filed:  February 21, 2012)
_____

OPINION
_____

PER CURIAM.

    Stephen George, a federal prisoner who is currently incarcerated at FCI McKean,

filed a petition for writ of habeas corpus (28 U.S.C. § 2241) to challenge the way in

which the Federal Bureau of Prisons (BOP) computed his federal sentence.  The District

Court denied both the petition and George's timely filed Fed. R. Civ. P. 52(b)/59(e)

motion. George now appeals. Having carefully examined the lengthy factual record, we find no legal or clear factual error in the District Court's opinion, and we will therefore affirm its judgment.

Between 2003 and 2005, George was arrested several times for various state offenses. One of those arrests (for which state charges were eventually dropped) attracted the attention of federal authorities. On April 26, 2005, a federal grand jury issued an indictment charging George with one count of possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1)). An arrest warrant was issued the next day. See United States v. George, W.D. Pa. Crim. No. 2:05-cr-00114, ECF Nos. 1, 5.

On July 16, 2005, George was arrested by a Pittsburgh police task force for (unrelated) controlled-substance offenses. He was held at the Allegheny County Jail (ACJ). Pursuant to a writ of habeas corpus ad prosequendum, George was produced in federal court for an August 17, 2005 hearing. He eventually pleaded guilty to the federal firearms offense on September 19, 2005. Five months later, George was sentenced to 71 months of incarceration and three years of supervised release; after sentencing, he was transferred back to the ACJ, the writ of habeas corpus ad prosequendum "satisfied in full." Supplemental Appendix (S.A.) 262.[1] The federal judgment was filed as a detainer with the Commonwealth of Pennsylvania.

---

[1] The Government's motion to file a supplemental appendix is granted.

George eventually pleaded guilty to selected charges in three remaining state cases,[2] and received a net three-to-six-year term of imprisonment. This sentence was to be *consecutive* to his federal sentence. S.A. 236–37. George apparently served this state term at numerous facilities, see S.A. 190, before being paroled on April 30, 2008, and entering federal custody pursuant to the detainer. Deeming the federal sentence to have commenced at this time, the BOP calculated that, with good-conduct time, George would be released on November 27, 2012. S.A. 90.

Dissatisfied with this projected release date, George pursued administrative remedies, arguing that a "nominal bond" granted by the state court in November 2006 had the effect of "placing [him] into federal . . . custody; [and] [s]ince there was no other custody holding [him], the BOP should credit [him] from November 20, 2006[,] onward." S.A. 33; see also S.A. 91–99. His efforts were unsuccessful; the BOP construed the challenge as a request for nunc pro tunc designation and, after weighing the relevant factors,[3] denied relief.

George then filed the instant habeas petition, the gravamen of which echoed, but did not quite match, what he had raised in his administrative proceedings. Invoking the

---

[2] Allegheny County dockets CP-02-CR-0005130-2005, CP-02-CR-0011437-2005, and CP-02-CR-0018350-2003.

[3] See 18 U.S.C. § 3621(b); Barden v. Keohane, 921 F.2d 476, 483 (3d Cir. 1990).

3

"primary custody" or "primary jurisdiction" doctrine,[4] George argued that the federal authorities gained primary custody over him at some point *before* the explicit commencement of his federal sentence in April 2008, thereby "forcing" the running of his federal term of incarceration. See, e.g., S.A. 44; see also 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."). George calculated his "correct" release date, with "anticipated good-conducted time," to fall in September of 2010. S.A. 41.

The District Court[5] denied relief, addressing George's primary-custody argument as well as its offshoots, such as an implied claim that the BOP had otherwise miscalculated his sentence or had erred in declining to grant nunc pro tunc relief. See George v. Longley, No. 10–65, 2011 WL 1327482, at *2, 9 (W.D. Pa. Apr. 6, 2011). In so doing, the District Court took judicial notice of George's state judgments, which were explicitly intended to run consecutive to George's federal term of incarceration. See S.A. 236–37. George then moved for additional factfinding pursuant to Fed. R. Civ. P. 52(b)

---

[4] This doctrine relates to the "determination of priority of custody and service of sentence between state and federal sovereigns." Taylor v. Reno, 164 F.3d 440, 444 n.1 (9th Cir. 1998). Custody is usually determined on a first-exercised basis, see Reynolds v. Thomas, 603 F.3d 1144, 1152 (9th Cir. 2010), and can be relinquished by granting bail, dismissing charges, and paroling the defendant. Custody also can expire at the end of a sentence. United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005).

[5] The parties consented to having the case heard and decided by a Magistrate Judge.

and for reconsideration pursuant to Fed. R. Civ. P. 59(e). His motion was denied, and this appeal followed.

George correctly brought his sentence-computation challenge under 28 U.S.C. § 2241. See Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990). Appellate "[j]urisdiction is proper in this Court under 28 U.S.C. §§ 1291 and 2253."[6] Vega v. United States, 493 F.3d 310, 313–14 (3d Cir. 2007); United States v. Cepero, 224 F.3d 256, 264–65 (3d Cir. 2000) (certificate of appealability not required to appeal from denial of section 2241 petition).

---

[6] Both the District Court and the appellee question whether George has standing to raise the primary-custody question. See George, 2011 WL 1327482, at *8; Br. for the Appellee 22. They cite Bowman v. Wilson, 672 F.2d 1145 (3d Cir. 1982), in which we observed the "exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty" and the "priority of prosecution" to be "solely [] question[s] of comity between the sovereignties which is not subject to attack by the prisoner." Id. at 1153–54 (citations omitted); accord United States v. Warren, 610 F.2d 680, 684 (9th Cir. 1980). As "[s]tanding represents a jurisdictional requirement which remains open to review at all stages of the litigation," Nat'l Org. for Women v. Scheidler, 510 U.S. 249, 255 (1994), we must therefore determine whether we have the jurisdiction to consider George's argument as he presents it (in contrast with its nunc pro tunc and sentence-calculation consequences, over which we undoubtedly have jurisdiction).

While the question is close, we believe that we do have jurisdiction over George's claim. In Bowman, we confronted an "unusual" case in which two sovereigns attempted to exercise jurisdictional authority over the petitioner and were in dispute over who had primary authority. See Bowman, 672 F.2d at 1149. That is altogether different from the situation at hand; here, there is no dispute between sovereigns nor any question over primacy of prosecution. George does not allege that the sovereigns could not do what they did, but rather that the way in which they treated his case led to the legal consequence of early commencement of his federal sentence—in other words, he does not wish to challenge the explicit exercise of intersovereign comity, but rather intends to raise the results flowing therefrom.

5

In reviewing the denial of a § 2241 petition, we "exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its findings of fact." See O'Donald v. Johns, 402 F.3d 172, 173 n.1 (3d Cir. 2005) (per curiam). To be clearly erroneous, a factual determination must "either (1) [be] completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bear[] no rational relationship to the supportive evidentiary data." Behrend v. Comcast Corp., 655 F.3d 182, 189 (3d Cir. 2011). Our review is further informed by the "presumption of regularity of the sentence, which the petitioner must overcome." Espinoza v. Sabol, 558 F.3d 83, 89 n.7 (1st Cir. 2009). Habeas corpus "is not a neutral proceeding in which the petitioner and the State stand on an equal footing. Rather, it is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment." Skaftouros v. United States, No. 11–0462, ___ F.3d ___, 2011 WL 6355163, at *10 (2d Cir. Dec. 20, 2011) (citing Pinkney v. Keane, 920 F.2d 1090, 1094 (2d Cir. 1990)). We review the denial of 52(b) and 59(e) motions for abuse of discretion. Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999); cf. United States v. Texas, 601 F.3d 354, 362 (5th Cir. 2010).

At the outset, we observe that George cannot fairly be said to have exhausted his administrative remedies on the specific issues raised in his § 2241 petition. "Ordinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998). But since failure to exhaust in this context is an affirmative defense,

6

see Garza v. Davis, 596 F.3d 1198, 1200 (10th Cir. 2010), we agree with the appellant that the Government has waived the issue. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 54 (1995). On the other hand, while George explicitly states that he does *not* wish to raise arguments about sentence calculation and nunc pro tunc designation, it appears that he does not understand that those more-traditional claims could also serve to provide the relief he seeks and that he believes arguing in the alternative will undermine his main contention; accordingly, we will follow the District Court's example and liberally construe his pleadings to include those claims. See Diop v. ICE/Homeland Sec., 656 F.3d 221, 229 (3d Cir. 2011).

Assuming without deciding that George's argument about custody could serve to force early commencement of his federal sentence, we agree with the District Court that the Commonwealth of Pennsylvania maintained custody of George throughout the relevant proceedings. George insists that his July 2005 arrest by the Pittsburgh police task force was done at the behest of federal authorities, but even if that *were* the case, he was actually arrested on state charges by agents representing the non-federal sovereign.[7] He argues, in the alternative, that he was granted release-on-recognizance bond on

---

[7] George points to a portion of the Government's response that, he claims, shows that it "conceded to the fact that Appellant was arrested pursuant to an outstanding [federal] arrest warrant." See Informal Br. 5. While the Government did indeed use the language to which George refers, see S.A. 67, we do not read it as a concession that George's *July 16, 2005* arrest was the product of the federal warrant; rather, it is clear that the Government is referring to George's *August 2005* temporary transfer and eventual prosecution on the warrant that issued in the federal criminal case.

August 1, 2005, but 1) the record suggests that he was not actually released on that day, S.A. 43, 104, and 2) that he was granted bond in one case, see S.A. 55, does not mean he was bonded out on the other cases for which he was being held.[8]  Finally, he argues that the nominal bond granted in November 2006, shortly before his state sentencing, forced him into federal custody, but the record shows that he was *not* granted nominal bond on one of the three cases, undermining his claim that Pennsylvania "relinquished" its hold on him.  Nor does a writ of habeas corpus ad prosequendum serve to transfer custody to the federal authorities.  Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) cmt. n.3(E) (2003); see also BOP Program Statement 5880.28 § 3b (1999) (emphasizing that ad prosequendum writs do not effect a transfer to federal custody).  In sum, the District Court did not err in reading the record to support the Government's view of the custody transfers and (as a result) the BOP's calculation of when George's federal sentence properly began.

With regard to nunc pro tunc designation, which we review for abuse of discretion, see Barden, 921 F.2d at 483, we are in accord with the District Court.  The

---

[8] The issue of bond is one of the more vexing, as the state dockets produced by the Government do not always clarify either the flow of custody or the actions taken by the state courts—a problem that tripped up, among others, the agent who prepared George's pre-sentence report and the Government's primary affiant, and which accounts for the majority of errors conceded in the appellee's brief.  This is especially important with regard to the August 1 date, as the record suggests that George *did* make bond on the other two cases on which he was being held.  S.A. 103–04, 120, 149.  But as the Government argues, the record also suggests that bond in those cases was forfeited for failure to appear, see S.A. 103–04, which we find to be a reasonable reading of the record.  See S.A. 127, 153 (warrants issuing); see also Pa. R. Crim. P. 536(A)(1)(a).

BOP followed the guidelines we established in <u>Barden</u>, <u>see</u> S.A. 195; moreover, the federal sentencing court was (and remains) silent on whether the federal sentence was to be consecutive or concurrent, in light of the default presumption of consecutive sentences, <u>see</u> 18 U.S.C. § 3584(a).

Turning to the BOP's general calculation of sentence, we also detect no error. The record suggests that each sovereign extensively credited George with time he spent in pretrial custody. <u>See, e.g.</u>, S.A. 90. Moreover, 18 U.S.C. § 3585(b) prohibits double counting of sentence credits. <u>Blood v. Bledsoe</u>, 648 F.3d 203, 209 (3d Cir. 2011) (per curiam), <u>cert. denied</u>, No. 11-7663, 2012 WL 33694 (Jan. 9, 2012).

To be sure, George points to several portions of the record that lend some support to his reading of events, such as when the Commonwealth of Pennsylvania issued a (presumably unnecessary) writ of habeas corpus ad prosequendum. We are puzzled, too, by the apparent delay in transferring George to a state facility to serve his state sentence, and by the multiple, overlapping bond issues identified *supra* in note 8. Finally, we observe that some of the Government's factual recitations find little reflection in the actual record—for example, we see no support for the interaction between the U.S. Marshals and the Warden of ACJ that the Government recounts on page 7 of its brief, interaction that would otherwise strongly suggest an *intention* (rather than an inference) of primary state custody. But George proceeds on untested and uncertain legal ground, and while he has presented *some* evidence that supports his argument of transferred custody, he has not met his burden of providing a "preponderance of the evidence."

9

Skaftouros, 2011 WL 6355163, at *10.  To the contrary: the record suggests that George was in state custody from the time of his July 2005 arrest to his April 2008 parole.  And in light of the fact that George's state term of incarceration was to be consecutive to his federal term, we agree with the District Court and the Government that "there can be no disputing that [George] is serving [his sentences] in the manner he should be[:] consecutively."  See George, 2011 WL 1327482, at *10.

In sum, as we determine that the District Court did not err—and that it did not abuse its discretion in denying George's post-judgment motions—we will affirm its judgment.[9]

---

[9] George's motion to strike the Government's brief is denied.  He appears to be unaware that the Government was granted additional time to file its brief pursuant to our order of October 31, 2011, although our docket reflects that he was sent a copy of that order. Hence, George's contention that the Government did not "file a motion for extension of time" is in error, and the Government's submissions were both timely filed and timely served upon George, who does not otherwise claim prejudice.