# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2594

_____

Charles Lee Elwell

*Petitioner - Appellant*

v.

Scott P. Fisher, Warden,
FCI Sandstone

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 12, 2013
Filed: June 6, 2013

_____

Before SMITH, MELLOY, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Federal prisoner Charles Lee Elwell appeals the denial of his 28 U.S.C. § 2241 petition for habeas relief. In his petition, Elwell challenged a Bureau of Prisons ("BOP") denial of a request for a *nunc pro tunc* designation in relation to, and denial

of federal credit for, time he spent in physical custody prior to completion of a state term of imprisonment. We affirm the denial of relief.

I.

In 2006, Elwell was arrested on Iowa charges for possessing marijuana with intent to deliver and being a felon in possession of a firearm. These state charges were eventually dismissed. Later in 2006, Elwell was arrested on state charges of felony operating while intoxicated (third offense) and eluding officers. He posted bond but was later arrested on state charges for marijuana possession. He again posted bond, and the amount of his bond following the marijuana-possession arrest was $91,700. Then, in March 2007, he was arrested by state officials for public intoxication and bond violations. At that point, a state court substantially raised his bond amount to $500,000. He did not post the increased bond, and he remained in custody.

A few days later, still in March 2007, the federal government filed an indictment against Elwell alleging participation in a marijuana-distribution conspiracy based upon Elwell's activities in 2006. The government obtained a *writ of habeas corpus ad prosequendum* and obtained control over Elwell's physical custody from Iowa. Elwell pleaded guilty to the federal charges during his initial appearance in federal court. The state-court judge handling Elwell's Iowa cases issued an order and memorandum continuing proceedings on the state charges until resolution of federal proceedings. The state court instructed counsel to provide notice upon the completion of Elwell's federal proceedings.

In November 2007, the United States District Court for the Southern District of Iowa sentenced Elwell to sixty-six months' imprisonment. The district court was silent as to whether it wished the federal sentence to be concurrent with or consecutive to any yet-to-be-imposed state sentence. Then, still in November 2007,

the federal government returned control over Elwell's physical custody to the state. Counsel, however, did not follow the state court's order to inform the state court that Elwell's federal proceedings had concluded.

In March 2008, the state court discovered that Elwell's federal proceedings had concluded. The state court ordered a status conference and, in April 2008, sentenced Elwell to two concurrent five-year sentences on the felony OWI and eluding charges. The state court also indicated clearly that it desired the state sentences to be concurrent with the already-imposed federal sentence.

Between April 2008 and February 2009, Elwell was in the physical custody of the state except for most of July 2008 when he was taken to a federal holding facility and then to a federal penitentiary before being returned to the state's physical custody. In February 2009, the state sentencing court discovered that Elwell was not serving his state and federal sentences concurrently. On February 6, 2009, to remedy this departure from the state court's declared intent, the state court resentenced Elwell to time served as measured from his March 2007 arrest for public intoxication through the date of his state resentencing. Following this state resentencing, Elwell was no longer subject to pending state charges or serving a state sentence of incarceration.

Elwell then sought credit from the BOP for time served. He also sought an 18 U.S.C. § 3621 *nunc pro tunc* designation of the various facilities where he had been housed prior to February 6, 2009, as the locations for service of his federal sentence. The BOP, applying the primary jurisdiction doctrine, determined that the state was the first sovereign to obtain physical custody over Elwell and held primary jurisdiction at all times until the February 6, 2009 state resentencing. As a result, the BOP determined that Elwell did not commence serving his federal sentence until that

-3-

date. Based upon 18 U.S.C. § 3584(a)[1] and BOP regulations, the BOP concluded that the district court's silence at federal sentencing regarding whether the state and federal sentences should be concurrent or consecutive required consecutive sentences. In reaching this conclusion, the BOP reached out to the federal sentencing judge for clarification of intent but received no response. The BOP also determined that, pursuant to 18 U.S.C. § 3585(b),[2] Elwell's receipt of state credit for all time in custody prior to February 6, 2009, precluded a grant of federal credit for that time. Finally, the BOP denied Elwell's request for *nunc pro tunc* designation of the facilities where he had been housed as the locations for serving his federal sentence.

---

[1]In relevant part, 18 U.S.C. § 3584(a) provides:

Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. *Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.*

(Emphasis added).

[2]18 U.S.C. § 3585(b) provides:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.*

(Emphasis added).

The end result of these determinations was that Elwell received no credit against his federal sentence for any time held in custody prior to February 6, 2009.

Elwell exhausted his administrative remedies through the BOP. He also filed for relief in the district court for the Southern District of Iowa where he had received his federal sentence. At the time, he was housed in a federal facility in Minnesota. As a result, the district court for the Southern District of Iowa denied relief stating that only the district court in Elwell's district of incarceration had jurisdiction to entertain a habeas petition. Finally, Elwell filed the present § 2241 petition in the District of Minnesota.

A magistrate judge[3] entered a report recommending denial of the petition, Elwell filed objections, and the district court[4] overruled his objections, adopting in full the report and recommendations. Elwell appeals.

II.

Elwell presents several specific and interrelated arguments on appeal. Before addressing specific aspects of the arguments that appear to be substantially distinct from one another, we address the broader doctrine of primary jurisdiction. Elwell argues generally that the BOP and district court misconstrued or misapplied this doctrine. This general argument flows throughout all of Elwell's more specific

---

[3]The Honorable Leo I. Brisbois, United States Magistrate Judge for the District of Minnesota.

[4]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

arguments, and we reject his general argument that the BOP and district court misapplied the doctrine.[5]

## A. Primary Jurisdiction Doctrine

Pursuant to the doctrine of primary jurisdiction, service of a federal sentence generally commences when the United States takes primary jurisdiction and a prisoner is presented to serve his federal sentence, not when the United States merely takes physical custody of a prisoner who is subject to another sovereign's primary jurisdiction. See United States v. Hayes, 535 F.3d 907, 909–10 (8th Cir. 2008); see also 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."); Binford v. United States, 436 F.3d 1252, 1256 (10th Cir. 2006) (sentence begins when received into custody for purpose of serving sentence, not when received into custody at an earlier time on a writ for the purpose of adjudicating federal claims).

The first sovereign to take physical custody of a defendant retains "primary jurisdiction" until releasing that jurisdiction. See United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005) ("As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person."). "Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail, 2) dismissal of charges, 3) parole, or 4) expiration of sentence." Id. Iowa was the first sovereign to take physical custody of Elwell in March 2007 when Elwell was arrested for public intoxication

---

[5]Elwell also presents a generalized argument under the heading "separation of powers" discussing the roles of the BOP and the courts. We do not address this generalized argument as a stand-alone issue, but we note that his several other arguments touch upon separation-of-powers concerns, see infra at n.6.

and bond violations. At that time, the state court increased his bond, Elwell did not post his increased bond, and Elwell remained in custody under Iowa's primary jurisdiction.

When the United States obtained physical custody of Elwell based upon the *writ of habeas corpus ad prosequendum*, the transfer of physical control over Elwell's custody from Iowa to the United States did not terminate Iowa's primary jurisdiction. See Hayes, 535 F.3d at 910 (federal sentence did not commence during or after the period of *writ of habeas corpus prosequendum*, but rather after service of state sentence). Rather, Elwell remained subject to Iowa's primary jurisdiction and was merely and temporarily "on loan" to the United States. Id.

In addition, we have recognized that a state court generally is not empowered to release a state's primary jurisdiction. See United States v. Dowdle, 217 F.3d 610, 611 (8th Cir. 2000) (per curiam) ("Because the state's jurisdiction was relinquished by a state judge, rather than the prosecutor or a representative of the state executive branch, the relinquishment was ineffective and Dowdle's status as a state prisoner was unchanged."). And, it is "well-settled that the state court's intent [regarding concurrent or consecutive sentences] is not binding [on the federal courts or the BOP]." Fegans v. United States, 506 F.3d 1101, 1104 (8th Cir. 2007). The non-binding nature of the state court's intentions are, understandably, frustrating to criminal defendants because the "state court's action raises the defendant's expectations but does not resolve the issue." Id. This frustration is, no doubt, compounded when a prisoner is moved about between federal and state facilities for the various tasks attendant to prisoner classification and processing, as appears to have happened in this case.

To the extent any of Elwell's arguments amount to a general attack upon the primary jurisdiction doctrine, a general challenge to the application of that doctrine in his case, or a challenge to the BOP's failure to honor the state court's intentions, we

reject his arguments. Iowa obtained primary jurisdiction in March 2007 and did not release that jurisdiction until the state resentencing in February 2009.

Against this general backdrop, we interpret Elwell's remaining arguments as encompassing three separate positions, which we address below.

## B. District Court Silence Regarding Concurrent Sentences

Elwell argues that the BOP erred in interpreting the federal sentencing court's silence as triggering a default status of consecutive sentences and also erred in denying him federal credit for time served prior to February 6, 2009. There are no factual disputes surrounding this argument, and we review *de novo* the legal interpretation of the consequences of the federal sentencing court's silence. See, e.g., United States v. Alvarez-Manzo, 570 F.3d 1070, 1075 (8th Cir. 2009) (applying *de novo* review to an issue that "involves a pure question of law").

Pursuant to 18 U.S.C. § 3584(a), "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Elwell's state and federal sentences were, in fact, imposed at different times, and the federal sentencing court in this case did not "order[] that the terms are to run concurrently." Id. Accordingly, based only upon the plain language of § 3584(a), it would appear that Elwell's federal sentence must run consecutive to his state sentence.

Elwell counters that § 3584(a) does not pronounce a binding rule applicable to the present situation involving the imposition of a federal sentence in anticipation of a yet-to-be-imposed state sentence. He bases his argument upon the absence of express identification of this scenario in § 3584(a). He also relies upon cases that have recognized uncertainty regarding district courts' authority to declare federal sentences as concurrent with, or consecutive to, anticipated state sentences.

Prior to 2012, circuits were split as to whether district courts enjoyed such authority when imposing a federal sentence in light of a yet-to-be-imposed state term of imprisonment. See Fegans, 506 F.3d at 1103 (stating that § 3584(a) "did not expressly address whether federal courts may decide to order a federal sentence to be served concurrent to or consecutive with a state prison sentence *that has not yet been imposed*"); United States v. Mayotte, 249 F.3d 797, 798–99 (8th Cir. 2001) (per curiam) (describing and listing the circuit split).[6] Our court, however, held in Mayotte and reaffirmed in Fegans that federal sentencing courts do hold such authority and could make such designations in circumstances involving yet-to-be-imposed state sentences. See Fegans, 506 F.3d at 1104 (applying Mayotte and noting that the district court's intent may not always be clear); Mayotte, 249 F.3d at 799 (holding that a district court may impose a sentence to be served consecutively to a

_____

[6]In general, the circuit split and uncertainty regarding district courts' authority in this context existed because of separation-of-power concerns between the judiciary and the Department of Justice (specifically the BOP) and also because of comity concerns surrounding state courts' authority. See, e.g., Mayotte, 249 F.3d at 799. Regarding the separation-of-powers concerns, it was not clear whether the BOP or district courts held the authority to designate federal sentences to run consecutive with or concurrent to anticipated state sentences. This uncertainty stemmed, in part, from 18 U.S.C. § 3621, which authorizes the BOP to designate a facility (state, federal, or otherwise) as the place for service of a federal sentence. The BOP may make this designation prospectively, or retrospectively through a *nunc pro tunc* order. Like most courts, we had recognized that the practical effect of the BOP's power to designate a state facility as a federal prisoner's place of confinement was, essentially, *de facto* authorization for the BOP to make a federal sentence run concurrently with a state sentence. See Fegans, 506 F.3d at 1103 ("[The] BOP has the practical power to 'make the federal sentence run concurrently by designating the state prison as a place of federal confinement, so that the clock would start to tick on the federal sentence.'" (quoting Romandine v. United States, 206 F.3d 731, 738 (7th Cir. 2000))). In Mayotte, we held simply that, given the broad sentencing authority otherwise vested in federal district court judges, the absence of an express prohibition meant federal judges could designate federal sentences to be consecutive to anticipated state court sentences. See, 249 F.3d at 799.

yet-to-be-imposed state sentence). Accordingly, at the time of Elwell's sentencing, district courts in our circuit possessed the authority to designate federal sentences as consecutive or concurrent to anticipated state sentences.

Then, in Setser v. United States, the U.S. Supreme Court resolved the circuit split, agreeing with the position adopted in our circuit and holding that federal district courts possess the authority to order federal sentences to run concurrent with or consecutive to yet-to-be-imposed state sentences. 132 S. Ct. 1463, 1468 (2012). In so holding, the Court recognized that the BOP possessed discretionary authority to designate a state facility as a place for federal confinement pursuant to 18 U.S.C. § 3621, but rejected characterization of that BOP authority as *de facto* "sentencing authority."[7] Id. at 1470. Importantly for our resolution of Elwell's case, the Court also rejected an argument that the BOP possessed discretion relating to the application of § 3584(a).[8] The Court, however, was not called upon to delineate the

---

[7]The Court recognized that § 3621 "*is* a conferral of authority on the [BOP]," but stated that § 3621 should not "be read to give the [BOP] exclusive authority." Setser, 132 S. Ct. at 1470. The Court also concluded that, "[p]ut to the choice, . . . it is much more natural to read § 3584(a) as . . . leaving room for the exercise of judicial discretion in the situations not covered, than it is to read § 3621(b) as giving the Bureau of Prisons what amounts to sentencing authority." Id.

[8]The Court stated:

We think it implausible that the effectiveness of those rules—of § 3584(a)'s prescription, for example, that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently"—depends upon the "discretion" of the Bureau.

Setser, 132 S. Ct. at 1469 n.3.

-10-

precise contours of the relationship between the BOP's § 3621 discretion and district courts' sentencing determinations, and it did not do so.

Given this state of affairs, the BOP in the present case correctly interpreted the district court's silence as requiring consecutive sentences pursuant to § 3584(a). We interpret Setser as treating the extent and exercise of the BOP's discretion pursuant to § 3621 as an issue separate and distinct from the application of § 3584. Because the district court could have, but did not, order concurrent sentences and because § 3584 is not a source of authority or discretion for the BOP, the BOP correctly applied the default rule of § 3584 for sentences imposed at different times and concluded the federal sentence was to be consecutive to the state sentence.

Further, to the extent Elwell separately challenges the BOP's denial of federal credit for time that the state court already credited to Elwell at resentencing, we reject the challenge as inconsistent with the express bar on double credit found in 18 U.S.C. § 3585(b), supra n.2. Through the Sentencing Reform Act of 1984, Congress reorganized several U.S. Code sections governing sentencing and introduced the express prohibition on double credit. See Castro v. Sniezek, 437 F. App'x 70, 72–73 (3d Cir. 2011) (per curiam) ("[section] 3568, which did not explicitly preclude double credit, has been superceded by the Sentencing Reform Act of 1984 and recodified at § 3585(b), which clearly prohibits double credit"). As with § 3584(a), we believe § 3585(b) is not a source of discretion for the BOP. Elwell received credit from the state court for the time he was held in custody between March 2007 and his state resentencing, and as such, that time was not eligible for federal credit pursuant to § 3585(b).

## C. Futility Theory

Elwell argues that his family was prepared to post the $500,000 bond in state court in March 2007, but that such an act would not have resulted in his release and

would have been futile in light of the federal custody. As such, he argues that we should recognize a futility exception, treating him as though he had posted such bond and treating Iowa's primary jurisdiction as having lapsed at that point in time. Assuming for the sake of argument that Elwell's family would have posted the $500,000 bond in the absence of the federal *writ*, we review *de novo* the legal question of whether our circuit should recognize a futility exception to the primary jurisdiction doctrine. See Alvarez-Manzo, 570 F.3d at 1075.

In asserting this futility theory, Elwell relies upon a Fifth Circuit per curiam opinion for the proposition that "if [a defendant] was denied release on bail because the federal detainer was lodged against him, then that was time spent in custody in connection with the (federal) offense . . . since the detainer was issued upon authority of the appellant's federal conviction and sentence." Willis v. United States, 438 F.2d 923, 925 (5th Cir. 1971) (per curiam) (internal citation and quotation marks omitted). In 1983, the Eighth Circuit recognized the theory of Willis and held that, when a federal detainer was in place, a defendant could receive credit for time in custody associated with the federal proceedings (seemingly regardless of primary jurisdiction) unless the government met the burden of proving that the defendant would have remained in state custody even in the absence of the federal detainer. See United States v. Haney, 711 F.2d 113, 114–15 (8th Cir. 1983). Haney was an exception to a general default rule that "a state prisoner who is also on detainer for federal violations should not receive credit on his federal sentence when he was given credit on the state sentence for the same period of time." McIntyre v. United States, 508 F.2d 403, 404 (8th Cir. 1975).

The parties do not cite Haney, and it is unclear why Elwell chose to rely upon Willis. Regardless, Haney was based on the prior and now-repealed Code section— § 3568—that permitted the "double crediting" of pre-trial detention time for state and

federal purposes.[9]  As just discussed, Congress repealed § 3568 and incorporated it into § 3585(b) with the addition of an express prohibition on double crediting. Haney, therefore, has been superceded by statute, and Elwell's arguments fare no better under Haney than under Willis.[10]

Had Elwell actually posted bond, Iowa's primary jurisdiction would have lapsed and the federal government would have obtained not just physical custody, but primary jurisdiction as well.  As it stands, however, Elwell's arguments under Willis (and thus under Haney) cannot be reconciled with the statutory prohibition on double crediting.  To the extent Elwell's arguments in this regard stem from his general

---

[9]Haney's reliance upon the predecessor Code section was clear:

A federal prisoner's sentence does not commence until "such person is received at the penitentiary, reformatory, or jail for service of such sentence." 18 U.S.C. § 3568 (1976).  However, a prisoner shall receive credit toward service of his federal sentence "for any days spent in custody in connection with the offense or acts for which sentence was imposed." Id.

Haney, 711 F.2d at 114.

[10]Although the Eighth Circuit previously has not expressly declared Haney to have been overruled by statute, other circuits and Eighth Circuit district courts have so held.  See, e.g., Castro, 437 F. App'x at 72–73 (3d Cir. 2011) (rejecting Haney and stating, "§ 3568, which did not explicitly preclude double credit, has been superceded by the Sentencing Reform Act of 1984 and recodified at § 3585(b), which clearly prohibits double credit."); Potwin v. Sanders, No. 2:05 CV00050, 2006 WL 932304, at *4 (E.D. Ark. Apr. 10, 2006) ("The holding in Haney is based on the language of 18 U.S.C. § 3568, a statute which does not apply to Petitioner and did not contain 18 U.S.C. § 3585(b)'s explicit prohibition against double credit. In conclusion, 18 U.S.C. § 3585, not Haney, governs this case.").

-13-

attacks upon the primary jurisdiction doctrine, we are without authority to disregard our circuit's well-established adherence to that doctrine.

## D.  Denial of *Nunc Pro Tunc* Designation

Finally, Elwell argues that the BOP abused its discretion in denying his request for designation of the various facilities where he was housed prior to February 6, 2009, as the locations for serving his federal sentence.  We "review this BOP decision for abuse of the agency's substantial discretion under 18 U.S.C. § 3621."  Fegans, 506 F.3d at 1105.

The BOP is authorized to designate a facility (federal or state) as the site for a defendant convicted of a federal offense to serve his federal sentence.  18 U.S.C. § 3621(b).  The BOP may do this in advance of prisoner placement or through a *nunc pro tunc* order designating the state facility after the fact.  See, e.g., Dunn v. Sanders, 247 F. App'x 853, 854 (8th Cir. 2007).  In exercising this authority, the BOP is to consider several statutory factors listed in § 3621(b) as well as factors set forth in BOP Program Statement 5160.05.  Section 3621 instructs the BOP to look at defendant-specific factors and facility-specific factors,[11] and the BOP program

---

[11]The BOP is to consider:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--
    (A)  concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B)  recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

statement expressly requires the BOP to consider the sentencing court's intent. The requirement that the BOP consider the sentencing court's intent is consistent with the Supreme Court's statement in <u>Setser</u> that the BOP enjoys discretion but does not enjoy "sentencing authority." 132 S. Ct. at 1470.

In asserting that the BOP abused its discretion, Elwell argues that the BOP erred in determining the commencement date for service of his sentence and in denying credit for time served. We reject these arguments as repeats of his challenge to the primary jurisdiction doctrine and the application of § 3584(a) and § 3585(b).

Elwell next argues that the BOP misjudged the extent and seriousness of his criminal history. The BOP, however, enjoys broad discretion in assessing the nature and circumstances of the offense and of Elwell's personal history and characteristics. <u>Fegans</u>, 506 F.3d at 1105. Elwell correctly notes that his criminal history was composed of marijuana, alcohol, and operating-while-intoxicated offenses, and it is clear to us that the BOP was not required to view this history as particularly egregious when viewed in the context of the greater population of federal offenders. Still, we are not free to substitute our judgment for that of the BOP, and we do not find the BOP's judgment to involve any clear error that might amount to an abuse of discretion. <u>Id.</u>

Finally, Elwell argues that the BOP improperly interpreted the district court's silence as evidencing an intent that his sentences be served consecutively. As already discussed, under the nondiscretionary terms of § 3584(a), the absence of a district court designation in this context leads to the conclusion that the federal sentence is to be served consecutive to the anticipated state sentence. Section 3621, however, is discretionary, and the Supreme Court in <u>Setser</u> did not purport to define the precise

---

18 U.S.C. § 3621(b).

relationship between § 3584 and § 3621. Thus, it is not necessarily the case that the BOP, when applying § 3621, must interpret silence as evidencing a district court's intent to impose consecutive sentences.

The question before us, however, is not whether the BOP was *required* to interpret the district court's silence as implicitly expressing an intent for consecutive sentences; the question is whether it was *permissible* for the BOP to adopt such an interpretation. Clearly, the interpretation was permissible. Before Setser, we had recognized that the BOP's discretion included the authority to interpret a district court's intent. See Fegans, 506 F.3d at 1105 (emphasizing "the limited scope of our review" and deferring to the BOP's interpretation of the district court's intent); Dunn, 247 F. App'x at 854 (recognizing such authority, but finding an abuse of discretion based on the BOP's misinterpretation of the record). And we find nothing in Setser suggesting that the BOP's traditional role of applying the factors of § 3621 is somehow usurped. Elwell points to nothing in the record suggesting that the district court intended concurrent sentences. As a result, we find no abuse of discretion. Fegans, 506 F.3d at 1105 ("[T]he BOP found no evidence that the federal sentencing judge intended the sentences to be concurrent. This agency finding is entitled to substantial deference[.]").

Because the BOP properly applied the primary jurisdiction doctrine and did not abuse its discretion in denying Elwell's request for *nunc pro tunc* designation, we affirm the judgment of the district court.

_____