In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-4217

JERMEL POPE,

*Petitioner-Appellant,*

*v.*

JANET PERDUE,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 14-cv-01393 — **Sara Darrow**, *Judge.*

ARGUED NOVEMBER 29, 2017 — DECIDED MAY 3, 2018

Before WOOD, *Chief Judge*, and RIPPLE and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. Various statutes vest the Federal Bureau of Prisons ("BOP") with the authority to make decisions that affect aspects of a federal inmate's sentence. In Jermel Pope's case, the BOP used its authority to prolong his federal sentence. Pope argues that the BOP erroneously wielded that authority and asks that we reconsider the BOP decisions that

extended his sentence. Pope has completed his term of imprisonment and is now serving a period of federal supervised release, so we must also consider whether Pope's habeas corpus petition is now moot because he is no longer housed in a federal corrections facility.

## I. BACKGROUND

On February 8, 2008, Illinois state authorities arrested Jermel Pope and charged him with pandering in violation of Illinois law. While his state case was pending, a federal grand jury returned an indictment against him for violating the federal equivalent of the state pandering law. Both the state and federal charges stemmed from the same events.

Pope bounced back and forth between state and federal facilities in order to appear in both the state and federal proceedings. These transfers were always conducted under a writ of habeas corpus ad prosequendum. Using this writ, a sovereign may take temporary custody of a prisoner in the custody of another sovereign, for the purpose of prosecution, without acquiring primary custody.

On June 10, 2009, a federal court sentenced Pope to 100 months' imprisonment on the federal offense. And a few months later, on August 24, 2009, an Illinois court sentenced him to five years' imprisonment on the state charge.

Then on August 31, 2009—shortly after the imposition of his state sentence and over two months after the imposition of his federal sentence—Pope was moved from an Illinois facility and housed in a federal correctional center. Two hundred and sixty-eight days later, on May 25, 2010, Pope was returned to a state facility. These post-sentencing changes of

custody were not accompanied by a writ of habeas corpus ad prosequendum.

Having returned to a state facility on May 25, 2010, Pope then remained at the state facility for the duration of his state sentence. On August 6, 2010—two years and six months after his arrest—Illinois paroled Pope. That same day Pope was turned over to federal authorities.

Notwithstanding the fact that the BOP had previously exercised custody over Pope from August 31, 2009, to May 25, 2010, the BOP calculated the start date of his federal sentence as August 6, 2010. The BOP also refused to give Pope credit for time served that had already been credited to his state sentence. Later, it also denied Pope's request that the BOP retroactively designate the Illinois prison where he served his state sentence as his place of imprisonment for his federal sentence. This retroactive designation would have, in effect, run Pope's federal sentence concurrently with his state sentence.

Pope's challenges to the BOP's decisions have dragged on for years. After exhausting his administrative remedies, Pope filed this habeas corpus petition on September 29, 2014. Five months later, the district court ordered the Government to show cause why Pope's writ should not be granted. In April 2015, the Government filed its response.

It was not until July 2016—21 months after Pope filed the petition we now review, and 14 months after the Government filed its response—that the district court returned to Pope's petition. It granted the petition in part, ordering the BOP to credit Pope 30 days. It denied all but one of Pope's additional claims. Because the Government had failed to respond to the

substance of that final claim, the district court gave the Government additional time to respond. Finally, on December 13, 2016—over two years after Pope filed initially—the district court denied the remainder of his petition.

Pope appealed. This Court set a briefing schedule to be completed on September 13, 2017, and scheduled oral argument for November 29, 2017. On November 24, 2017, the BOP released Pope to begin serving his term of supervised release. Then, two days before oral argument, the Government moved to dismiss this case as moot. We now address that motion, as well as the merits of Pope's 28 U.S.C. § 2241 petition, which we review *de novo*, *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013).

## II. ANALYSIS

This appeal stems from the BOP's position that Pope should serve his federal sentence consecutively rather than concurrently with his state sentence. To ensure that end, the BOP commenced Pope's federal sentence only after he was paroled by Illinois despite the fact that Pope had already spent months in a BOP facility. It also denied his request for a retroactive designation. Finally, it denied him time-served credit against his federal sentence for time Illinois counted towards his state sentence.

On appeal, Pope challenges each of these decisions. The Government contests the merits of Pope's claims and argues that Pope's case is now moot because he has been released from prison.

Our analysis proceeds in two parts. We first address mootness, concluding that Pope's petition is live. We then turn to

the merits. There, we conclude the BOP held Pope in prison for too long.

*A. Pope's release from prison does not render his claim moot.*

The heavy burden of demonstrating mootness lies with the party asserting it. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). When a former inmate still serving a term of supervised release challenges the length or computation of his sentence, his case is not moot so long as he could obtain "any potential benefit" from a favorable decision. *United States v. Trotter*, 270 F.3d 1150, 1152 (7th Cir. 2001) ("Unless we are confident that [the former inmate] *cannot* benefit from success on appeal, the case is not moot.").[1]

The Government cannot meet this heavy burden because Pope can benefit from success on appeal. It is true that a finding that Pope spent too much time in prison would not automatically entitle him to less supervised release. *United States v. Johnson*, 529 U.S. 53, 59–60 (2000). Nevertheless, such a finding would carry "great weight" in a § 3583(e) motion to reduce Pope's term. *Id*. at 60. This is enough. *See United States v. Epps*, 707 F.3d 337, 345 (D.C. Cir. 2013); *Mujahid v. Daniels*, 413 F.3d 991, 994–95 (9th Cir. 2005).

The Government nonetheless contends that Pope has nothing to gain on remand because he initially received a term of supervised release below the mandatory minimum. This argument fails because it collapses the statutory requirements

---

[1] The Government's reliance on *Spencer v. Kemna*'s mootness standard is misplaced. *See* 523 U.S. 1, 7 (1998). While Pope is no longer incarcerated, he remains on supervised release—another form of custody. *Trotter*, 270 F.3d at 1152. Thus, *Spencer*, a case in which the plaintiff was no longer in custody at all, does not apply.

that govern how the court must impose a sentence with those that control how it may modify one. When the court sentenced Pope, it was bound by statute to impose a mandatory minimum term of supervised release. *See* 18 U.S.C. § 3583(a) ("The court, in imposing a sentence to a term of imprisonment … shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute … ."). But § 3583(e) also independently authorizes the court to "terminate a term of supervised release … if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *Id.* § 3583(e)(1). No language from either subsection suggests that Congress intended a minimum term of supervised release "in imposing a sentence" to constrain the court's ability to later terminate it. *United States v. Spinelle*, 41 F.3d 1056, 1060 (6th Cir. 1994); *United States v. Scott*, 362 F. Supp. 2d 982, 983–84 (N.D. Ill. 2005). The court, therefore, could terminate Pope's term of supervised release after one year even though Pope initially received a term of supervised release below the statutory minimum.[2]

The Government also argues that Pope's challenge is moot because the authority to modify his term of supervised release rests with the federal sentencing court rather than the federal habeas court. Yet it fails to explain why mootness should turn on the identity of the court on remand, particularly when this court could order the habeas court to transfer further proceedings to the sentencing court. Here, we need only ask whether Pope has something to gain on remand. He does.

---

[2] In holding today that Pope may benefit from a favorable decision, we reject *Trotter*'s dicta suggesting otherwise. *See* 270 F.3d at 1153.

Though Pope has been released from prison, he remains in custody. A finding by this court that Pope spent too long in prison would not automatically entitle him to less supervised release. But it would carry great weight in a § 3583(e) motion to reduce that term. That potential benefit keeps Pope's case alive.

*B. Pope spent more time in prison than he should have.*

Pope contends that he was held beyond his prison term through three means. First, he argues that the BOP miscalculated the start date of his federal sentence. Second, he argues that the BOP abused its discretion by denying his request for a retroactive designation. And third, he argues that the BOP should have given him credit for time served that Illinois had already credited against his state sentence. We address each argument in turn.

*1. The BOP began to run Pope's federal sentence several months too late.*

The BOP determined that Pope's federal sentence commenced on August 6, 2010. Pope contends that the BOP instead should have begun his sentence on August 31, 2009—the start of a 268-day period in which he was held in federal custody without a writ of habeas corpus ad prosequendum. While the BOP has authority to determine when a sentence begins to run, its exercise of that authority is bound by the doctrine of primary custody, *see Ponzi v. Fessenden*, 258 U.S. 254, 260–61 (1922), and by statute, *see* 18 U.S.C. § 3585(a). Examining both, we conclude that Pope's federal sentence commenced on August 31, 2009.

*a. The United States exercised primary custody over Pope on August 31, 2009.*

Under the doctrine of primary custody, an inmate's federal sentence may only commence after the government exercises primary jurisdiction over him. *See Loewe v. Cross*, 589 F. App'x 788, 789 (7th Cir. 2014); *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013); *Binford v. United States*, 436 F.3d 1252, 1256 (10th Cir. 2006). In general, the sovereign that first arrests a defendant takes primary custody over him. *See United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *Thomas v. Brewer*, 923 F.2d 1361, 1366–67 (9th Cir. 1991). The arresting sovereign retains primary custody "until [it] relinquishes its priority in some way." *Cole*, 416 F.3d at 897.

Because the decision to relinquish primary custody rests solely with the sovereign exercising priority, *see Ponzi*, 258 U.S. at 260–62, we look to the intent of that sovereign to determine if it has relinquished primary custody through a transfer. In the absence of evidence that the transferring sovereign intended to maintain custody, we presume that the sovereign intended to relinquish it. This presumption promotes clarity for inmates, jailers, and courts. Clarity here is particularly important for prisoners whose rights may depend on the sovereign under whose jurisdiction they are subject. *Stephens v. Sabol*, 539 F. Supp. 2d 489, 496 (D. Mass. 2008).

In this case, Illinois authorities arrested Pope on February 8, 2008. Thus, Illinois had primary custody over him starting that day. The BOP maintains that Illinois maintained primary custody until Pope was paroled on August 6, 2010. This could only be the case, however, if Illinois intended to maintain primary custody over Pope despite transferring him to the BOP on August 31, 2009.

Here, the transfer itself is the only compelling evidence of Illinois's intent, and that evidence weighs in favor of finding that Illinois intended to relinquish primary custody. We reject Pope's contention that the absence of a writ of habeas corpus ad prosequendum indicates that Illinois intended to transfer primary custody. By the time the August 31 transfer occurred, the need for this writ had passed because Pope's federal and state proceedings had concluded. Likewise, we reject the invitation by both parties to rely on recent statements made by IDOC officials. These statements, made nearly 7 years after the transfer, provide little insight into Illinois's intent at the time.

The BOP had ample opportunity in the district court to introduce evidence that Illinois intended to maintain custody over Pope when it transferred him to the BOP on August 31, 2009. In the absence of this evidence, we presume that Illinois intended to relinquish custody. Accordingly, we find that on August 31, 2009, when Illinois transferred Pope without any indication that the state intended to maintain custody, Illinois intentionally relinquished primary custody.

*b. Pope satisfied the statutory requirements for the commencement of his sentence on August 31, 2009.*

18 U.S.C. § 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to … the official detention facility at which the sentence is to be served." Because Pope had been received in primary federal custody on August 31, 2009, at the Chicago Metropolitan Correctional Center to await transportation to the official detention facility at which

Pope's federal sentence was to be served, he satisfied the statutory requirements as well.

The Government insists that Pope could not have satisfied the statute. In its view, the statute requires the BOP to designate the inmate to a detention facility before a sentence can commence. This argument fails as the language of the statute contains no such requirement. It requires that the inmate be awaiting transport to a detention facility, not that the detention facility already be assigned. Moreover, such an interpretation would lead to unwarranted results. Under it, an inmate could spend a lifetime in primary federal custody without commencing his sentence if the BOP simply refused to designate a facility.

Illinois transferred Pope to federal authorities after his state sentencing without any indication that it intended to maintain primary custody. In doing so, it transferred primary custody to federal authorities. When Pope arrived at the Chicago Metropolitan Correctional Center, he also satisfied the statutory requirements for his federal sentence to commence. We therefore conclude that Pope's federal sentence commenced on August 31, 2009. [3]

---

[3] This holding does not upset the BOP's ability to run federal sentences concurrently with state sentences through designation under 18 U.S.C. §§ 3585(a) and 3621(b). The BOP simply may not delay the commencement of the sentence of an inmate in its primary custody by failing to designate an official detention facility.

*2. The BOP abused its discretion by misapplying 18 U.S.C. § 3584(a) when it denied Pope's request for a retroactive designation.*

As he was serving his federal sentence, Pope asked the BOP to retroactively designate the Illinois prison where he served his state sentence as his place of imprisonment for his federal sentence. *See* 18 U.S.C. § 3621. The BOP denied Pope's request. Pope contends that the BOP abused its discretion when it denied his request because it considered—and drew unwarranted inferences from—silence by the district court on whether his federal sentence should run consecutively or concurrently with his state sentence.

The BOP may weigh five factors when it considers a request for retroactive designation. In Pope's case, the BOP considered three factors, including "any statement by the court that imposed the sentence … concerning the purposes for which the sentence to imprisonment was determined to be warranted [or] recommending a type of penal or correctional facility as appropriate." *See* 18 U.S.C. § 3621(b)(4). In considering this factor the BOP stated that, under 18 U.S.C. § 3584(a), "terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." (R. 1 at 17.) It further noted that the federal court did "not assert[] a position pertaining to retroactive (concurrent) designation." (*Id*.) The BOP therefore presumed from the court's silence that Pope's sentence should run consecutively.

The Supreme Court has explicitly prohibited the BOP from drawing this inference for defendants who—like Pope—had not yet received their state sentence when their federal sentence was imposed. *Setser v. United States*, 566 U.S. 231, 239

(2012).[4] Thus, on this basis the BOP abused its discretion when it considered Pope's request for retroactive designation. *Mangum v. Hallembaek*, 824 F.3d 98, 101–103 (4th Cir. 2016).

*3. The BOP lawfully refused to credit time Pope served in custody before his state sentence commenced.*

Finally, Pope argues that the BOP violated federal law by not crediting the time he spent in custody before his state sentence commenced. This argument fails.

The BOP "has the authority to determine when to give a defendant credit against a sentence for time he has served." *United States v. Jones*, 34 F.3d 495, 499 (7th Cir. 1994). The BOP must give credit "toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences … *that has not been credited against another sentence*." 18 U.S.C. § 3585(b) (emphasis added). In Pope's case, the BOP determined that Illinois had already credited Pope for the time he served before his state sentence. It therefore did not credit that time against Pope's federal sentence.

The state court's original judgment credited Pope 534 days against his state sentence. Pope, however, places heavy emphasis on the fact that the state court amended its judgment to remove any reference to time served. He insists that this shows irrefutably that Illinois did not credit that time. We are not persuaded. Like the district court, we are "skeptical that

---

[4] During oral argument, the Government claimed for the first time that the BOP denied Pope's retroactive designation request before *Setser*. The record is unclear on the exact timing of the BOP's decision. Regardless, arguments raised for the first time at oral argument are waived. *See, e.g., Quality Oil, Inc. v. Kelley Partners, Inc.*, 657 F.3d 609, 614 (7th Cir. 2011).

an Illinois court could retroactively declare, in purely technical fashion, that it had refused to credit time against a prisoner's sentence." (R. 16 at 8.)

A less myopic view of the facts demonstrates that the BOP's decision was well within its discretion. Indeed, the Illinois court sentenced Pope to five years' imprisonment. Because Illinois gives day-for-day credit, he would expect to serve two years and six months of that sentence. Illinois paroled Pope two years and six months after his arrest. This, of course, implies that Illinois credited Pope for that time. The state court's original judgment suggested the same. And when the BOP contacted the IDOC about this question, it confirmed that Illinois had credited Pope for this time. Because the state court's amended judgment ignored that Pope had in fact received credit for time served, the BOP did not abuse its discretion when it assigned it little weight.

### III. CONCLUSION

Because overincarceration carries great weight in a motion to modify supervised release under 18 U.S.C. § 3538(e), Jermel Pope's case remains live. It has merit as well. The BOP miscalculated the date Pope's sentence commenced. But for this error, it would have released Pope from prison months before it eventually did. The BOP also abused its discretion when it denied Pope's request for retroactive designation. Its decision to deny Pope time-served credit, however, was within its discretion.

Accordingly, we DENY the Government's motion to dismiss Pope's case as moot, and VACATE and REMAND the district court's denial of Pope's habeas corpus petition. On re-

mand, the district court shall transfer Pope's case to the sentencing court for further proceedings. IT IS FURTHER ORDERED that the BOP shall revise the date of the commencement of Pope's federal sentence to August 31, 2009, and reconsider Pope's request for retroactive designation in line with the Supreme Court's decision in *Setser*.